UNITED STATES of America, Appellee,

v.

Eddie HUTCHER and Stephen Mydanick, Defendants-Appellants.

Nos. 910, 919, Dockets 79–1277, 79–1426.

United States Court of Appeals, Second Circuit.

Argued March 20, 1980.

Decided May 5, 1980.

---

Lewis R. Friedman, New York City (Litman, Friedman, Kaufman & Asche, New York City, Richard M. Asche, Herman Kaufman, Jack T. Litman and Russell M. Gioiella, New York City, of counsel), for defendant-appellant Hutcher.

John H. Doyle, III, Asst. U. S. Atty., New York City (William M. Tendy, U. S. Atty., S. D. N. Y., Lee S. Richards and Gregory L. Diskant, Asst. U. S. Attys., New York City, of counsel), for appellee.

Markewich, Rosenhaus, Markewich & Friedman, P. C., New York City (Daniel Markewich and Gary Brown, New York City, of counsel), for defendant-appellant Mydanick.

Before LUMBARD, MULLIGAN and OAKES, Circuit Judges.

LUMBARD, Circuit Judge:

Eddie Hutcher and Stephan Mydanick appeal from judgments of conviction for conspiring to defraud the United States in violation of 18 U.S.C. § 371, for making false statements to the Small Business Administration (SBA) in violation of 18 U.S.C. § 1001, and, as to Hutcher only, for bribing an SBA loan officer in violation of 18 U.S.C. § 201(b). The judgments were entered in the Southern District of New York by Judge Brieant on November 9, 1979 and July 24, 1979, respectively, following separate jury trials. Hutcher claims that the prosecution improperly cross-examined a defense witness, improperly referred to that cross-examination in its rebuttal summation, and failed to fulfill its obligations under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and the Jencks Act, 18 U.S.C. § 3500. Mydanick claims that the district court erred in charging the jury and in relying upon materially incorrect information in sentencing. We affirm both judgments.

I.

Neither Hutcher nor Mydanick questions the sufficiency of the evidence supporting his conviction. We therefore rehearse that evidence synoptically.

Hutcher was a principal of Astor Metal Products, a Brooklyn-based company which in 1973 was seeking an SBA-guaranteed loan.[1] Mydanick, his law partner Frank Crisona, John Ebbecke, an acquaintance of Mydanick and a former banker, and David Koch, a lawyer with some influence at the Vanguard National Bank on Long Island, all agreed to assure to Astor Metal—through fraud and bribery—a bank loan, an SBA loan-guarantee, and necessary interim loans. In return, Hutcher agreed to pay them a fee of $35,000, which equalled 10% of the amount of Astor Metal's loan. Thereafter, Hutcher, Mydanick, Crisona, and Ebbecke, in preparing Astor Metal's loan-guarantee application, inflated the company's financial statements, reported only $2,800 of the $35,000 "finders' fee" to be paid,[2] failed to report, of course, the intended bribes, and falsely reported Astor Metal's intended use of the loan. Mydanick signed the application as the attorney of record, and Ebbecke submitted it to the SBA.

To the finders' chagrin, the SBA rejected Astor Metal's application. They recommended to Hutcher that he personally talk to the SBA loan-officer in charge of applications from Long Island banks, Kenneth

---

1. The SBA administers a guaranteed-loan program through which it guarantees the repayment of 90% of an amount borrowed by a small business from a commercial bank participating in the program.

2. The payment of a finder's fee is not illegal. However, the SBA requires that loan-guarantee applicants disclose such fees, and it rejects applications of businesses which have agreed to pay what it deems to be an exorbitant fee.

Senhouse. Hutcher did, and offered Senhouse $10,000 to approve Astor Metal's application, which was then re-submitted. Senhouse approved it. At a lunch attended by Hutcher, Senhouse, and Crisona, Hutcher paid Senhouse $5,000 and promised to pay the rest of the bribe upon the loan's closing.

Astor Metal received the $350,000 loan in March 1974. It used the money to satisfy its debt upon another loan—not, as stated in the loan-guarantee application, to acquire and repair machinery—and it never repaid Vanguard National Bank, which then demanded and received payment from the SBA. Astor Metal entered bankruptcy proceedings in 1976. Because all of Astor Metal's assets were covered by pre-existing liens when it liquidated in 1978, the SBA never recovered any of the $337,628 it paid to Vanguard pursuant to the guarantee. Moreover, Mydanick, Crisona, Ebbecke, and Koch never received their $35,000 fee, for Hutcher, stating that they had not earned it, refused to pay them.

In 1978, Crisona agreed to cooperate with the government in prosecuting this fraud and bribery. Crisona tape-recorded conversations with Mydanick and Hutcher during which each admitted his role in the conspiracy. Crisona also, along with Ebbecke, testified for the prosecution at Hutcher's and Mydanick's trials.

## II.

Hutcher claims that the prosecution acted improperly in cross-examining a witness and in failing to make available certain evidence. Mydanick claims that the district court erred in charging the jury and in sentencing. We will recite seriatim the facts material to our discussion of each claim.

### A.

Hutcher's first claim is that the prosecution improperly cross-examined Senhouse—by asking him whether, in connection with investigations unrelated to Hutcher's trial, he had been questioned by the FBI or before a federal grand jury about his alleged

receipt of bribes—and that the prosecution improperly referred to that cross-examination in its rebuttal summation.

Prior to the prosecution's cross-examination of Senhouse, the defense pointed out in its opening statement to the jury that Senhouse still worked at the SBA and had never been indicted despite the prosecution's assertion that he accepted Hutcher's bribe. Also, in its direct examination of Senhouse, the defense elicited that neither the FBI nor the United States Attorney's Office had ever asked Senhouse whether he received a bribe from Hutcher, and that Senhouse had not been asked to testify before the grand jury investigating the allegations against Hutcher. During cross-examination, the following occurred:

"Q: Have you been interviewed by the FBI in connection with other allegations about the receipt of bribes?

A: Yes, sir.

MR. HOLLMAN: I will object to that.

COURT: Overruled.

A: Yes, sir."

The prosecution then elicited, without any further defense objection, that before the Hutcher investigation Senhouse had denied five allegations, put to him either by the FBI or before a federal grand jury, that he had received bribes in return for approving loan guarantee applications.

The defense elicited from Senhouse on redirect examination that Senhouse, after his last appearance before the grand jury in March 1976, had always been available to answer questions, but had never been asked whether he knew Crisona. Also, in its summation, the defense suggested that Hutcher had been indicted because the prosecution's "faulty investigation" had failed to discover that Senhouse would deny knowing Crisona and would deny receiving Hutcher's bribe. During rebuttal summation, to none of which the defense objected, the prosecution conceded that Senhouse should perhaps have been questioned, but then rhetorically asked, "[W]hat does that have to do with the guilt or innocence of Eddie Hutcher? What difference would it have made to the

FBI or the grand jury if Mr. Senhouse had gone in and given another set of denials?" The prosecution also asked the jury to consider whether, after viewing Senhouse and hearing his testimony, they would be deflected from an investigation by his denials.

Hutcher's claim that the prosecution's cross-examination and rebuttal summation were improper cannot avail him on appeal, for the single, general objection made at trial did not preserve this claim for appeal under Fed.R.Evid. 103(a) and the admission of the prosecution's questioning and statements in summation did not constitute plain error of which we may take notice, even absent objection, under Fed.R. Evid. 103(d) and Fed.R.Crim.P. 52(b). Rule 103(a) states, "Error may not be predicated upon a ruling which admits . . . evidence unless a substantial right of the party is affected and . . . a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context . . . ." This circuit ordinarily applies Rules 103(a) strictly, *United States v. Rubin*, 609 F.2d 51, 62–63 (2d Cir. 1979); *United States v. Maultasch*, 596 F.2d 19, 24 (2d Cir. 1979) (the claim of error was "unavailing" because defense "made no objection that clearly stated the specific ground now asserted on appeal"). Indeed, well before Rule 103(a) existed, this circuit followed the principle that Rule 103(a) incorporates: "*a general objection, if overruled,* cannot avail the objector on appeal." 1 *Wigmore on Evidence* § 18, at 332 (emphasis original); *see, e. g. United States v. Del Llano*, 354 F.2d 844, 847 (2d Cir. 1965) (en banc); *United States v. Indiviglio*, 352 F.2d 276, 279 (2d Cir. 1965) (en banc), *cert. denied*, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966).

Hutcher's only objection—"I will object to that"—obviously did not state a specific ground. Nor was the specific ground of objection "apparent from the context," for nothing in the record suggests that the trial judge or prosecution were already aware of the specific ground, Wright & Graham, *Federal Practice and Procedure: Evidence*

§ 5036, at 177–78; *cf. United States v. Check*, 582 F.2d 668, 675–76 (2d Cir. 1978); *United States v. Camporeale*, 515 F.2d 184 (2d Cir. 1975), that the defense failed to object specifically because the trial judge silently understood the ground, Wright & Graham, *supra*, at 182; *cf. United States v. McPartlin*, 595 F.2d 1321, 1353 (7th Cir.), *cert. denied*, 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979), or that the specific ground of objection was for any other reason apparent from the context.

Hutcher asserts that the first objection must be deemed sufficient because any objection after the first would only have attracted the jury's attention to the purportedly improper evidence. However, that possibility does not suffice to excuse non-compliance with Rule 103(a). Motions to strike and limiting instructions exist to curb the jury's attention to improper evidence. Not having objected after the prosecution's first cross-examination question nor having requested a motion to strike or a limiting instruction afterward, and not having objected at all to the rebuttal summation, Hutcher has not complied with Rule 103(a) or come within its exception as to either claimed impropriety.

The insufficiency of Hutcher's objection notwithstanding, we would take notice of the prosecution's purported improprieties if their admission constituted plain error. Fed.R.Evid. 103(d); Fed.R.Crim.P. 52(b); *United States v. Rubin, supra*, 609 F.2d at 63. We do not believe, however, that plain error was committed. In its opening and direct examination of Senhouse, the defense questioned the thoroughness of the prosecution's investigation; and the defense re-invoked that challenge in its redirect examination of Senhouse and its summation. The trial judge did not plainly err in allowing the prosecution to respond to this clear attack upon its investigation. The prosecution's questioning and summation statements did not "seriously affect the fairness, integrity or public reputation of judicial proceedings," *United States v. Indiviglio, supra*, 352 F.2d at 280; nor has the adversary method of trial, whereby an attorney's

conduct binds his client, produced in this case an unduly harsh result. *United States v. Moore*, 571 F.2d 76, 88 (2d Cir. 1978). Indeed, even if the admission of these statements could be considered plain error, the error almost certainly was harmless in light of the overwhelming evidence against Hutcher, which included his tape-recorded admission and the testimony of two of his co-conspirators.

### B.

Hutcher's second claim is that the prosecution failed to fulfill its obligation under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and the Jencks Act, 18 U.S.C. § 3500, because it failed to make available to the defense the affidavits and testimony which were given in Astor Metal's 1976 bankruptcy proceedings by one of the prosecution's witnesses, Eugene Greenspun, and which were inconsistent with Greenspun's testimony at Hutcher's trial. This claim does not warrant reversal either.

Greenspun became Astor Metal's production manager in 1974. When Astor Metal entered bankruptcy proceedings in 1976—proceedings which Hutcher, as a principal of Astor Metal, unquestionably knew about and most of which he probably attended—Greenspun submitted affidavits and testified as to the value of Astor Metal's assets. In preparing for Hutcher's trial, but before locating Greenspun or deciding whether to call him as a witness if he were found, the prosecution sent a non-lawyer investigator to inspect the bankruptcy court files for the purpose of looking for Greenspun's address, and it later sent a second non-lawyer investigator to inspect the file for testimony by Hutcher. Neither investigator brought Greenspun's affidavits or testimony to the prosecution; one investigator provided the prosecution with a copy of the bankruptcy proceeding's docket sheet, which the prosecution made available to the defense. At Hutcher's trial Greenspun again testified as

to the value of Astor Metal's assets, and additionally as to the use to which Astor Metal put the loan proceeds, but Greenspun placed a significantly lower value upon the assets than he had in the bankruptcy proceedings.[3] Hutcher now claims that the prosecution had a duty under *Brady* and § 3500 to have made available to the defense Greenspun's affidavits and testimony.

The simple and sufficient answer to Hutcher's claim is that Greenspun's affidavits and testimony were never in the possession of the prosecution and were therefore not materials which the prosecution had a *Brady* or § 3500 duty to make available. The prosecution never saw Greenspun's affidavits or testimony, which were in the possession of an arm of the district court and accordingly were not subject to the prosecution's control. "Clearly the government cannot be required to produce that which it does not control and never possessed or inspected." *United States v. Canniff*, 521 F.2d 565, 573 (2d Cir.), *cert. denied*, 423 U.S. 1059, 96 S.Ct. 796, 46 L.Ed.2d 650 (1975). Hutcher argues that the prosecution did possess these materials because they must for some time have actually been in the hands of the prosecution's investigators. We reject, however, a notion of "possession" which is so elastic as to embrace materials that the prosecution never had in its files, never inspected, and never knew about. The prosecution possessed only the bankruptcy proceeding's docket sheet, which it made available to the defense and which in any event provided Hutcher with the means of inquiring whether Greenspun had given any inconsistent testimony at the bankruptcy proceeding.

### C.

Mydanick's first claim is that the district court relied, in sentencing him, upon a pre-sentencing report that was erroneous in two respects and upon a letter from the prosecution which he had no opportunity to rebut before sentencing. This claim borders on the frivolous.

---

**3.** In a post-trial evidentiary hearing upon Hutcher's motion for a new trial, the district court found that Greenspun's bankruptcy proceeding testimony was "false and probably perjurious."

In sentencing Mydanick to a five-year term of imprisonment, the district court stated its belief that Mydanick had an "evil and depraved attitude" toward a crime that it considered to be "a very serious fraud." The presentencing report had advised the district court that a sentence of imprisonment of between 24 and 60 months would result in Mydanick's release on parole within the period recommended by the Parole Commission. It had also stated that Mydanick's offense, because "consummated," was rated "high" under 28 C.F.R. § 2.20 (1979). The prosecution's letter had submitted to the district court an unredacted transcript of a recorded conversation between Mydanick and Crisona. In connection with pre-trial motions, the prosecution had previously submitted to the district court the same unredacted transcript. Mydanick claims that the report should have advised that he be sentenced to a period of between 21 and 60 months in order that he gain parole within the recommended period, that his offense should have been rated "moderate" because the conspiracy in which he joined was "unconsummated," and that he had no opportunity to comment upon the unredacted transcript because he did not know of the prosecution's letter until after the sentencing.

■■ So long as a sentence is within statutory limits—as is Mydanick's—appellate review is at an end unless the district court relied on constitutionally impermissible factors or materially incorrect information. *Dorszyski v. United States*, 418 U.S. 424, 431 & n.7, 94 S.Ct. 3042, 3047 & n.7, 41 L.Ed.2d 855 (1974); *United States v. Ochs*, 595 F.2d 1247, 1262 (2d Cir.), *cert. denied*, 444 U.S. 955, 100 S.Ct. 435, 62 L.Ed.2d 328 (1979). In light of the district court's evaluation of Mydanick and his offense, and the fact that the district court imposed the maximum sentence recommended in the pre-sentence report, it is clear that the report's statement as to the minimum period of sentencing was immaterial. It is equally clear that Mydanick's offense was correctly classified as "high," for the conspiracy in which Mydanick participated—to defraud the United States and make false state-ments to the SBA—was consummated. As to the unredacted transcripts, Mydanick cannot now claim that he had no opportunity to comment upon them, for he must have known that the district court had had the unredacted transcripts since before the trial began. If, in fact, Mydanick was surprised to learn at sentencing that the district court had taken into account the unredacted transcripts, and if Mydanick had some argument why the district court should not have taken those transcripts into account, then Mydanick could have filed a motion under Fed.R.Crim.P. 35. He did not do so.

### D.

Mydanick's second claim is that the district court erred in two respects in charging the jury. We disagree.

■■ Mydanick asked the district court to charge the jury that, in order to find him guilty of the conspiracy count, it must find that he knew of the false statements in the loan-guarantee application before the loan closed in March 1974, and also that, in order to find him guilty of either count, it must find that the finders' fee was to be paid out of the loan proceeds. The district court stated that its charge would implicitly include Mydanick's first request, and it denied his second request. Mydanick now argues that the district court did not include his first request because the district court stated to the jury that the conspiracy alleged in the indictment continued until December 1974. Mydanick also argues that the district court erred in denying his second request.

The district court's charge did implicitly include Mydanick's first request. The jury was specifically instructed that the indictment alleged that Mydanick and his co-conspirators had agreed to make false statements on the loan-guarantee application and that Mydanick denied having any knowledge before the loan was closed that the application contained false statements. By finding Mydanick guilty, the jury must have found that Mydanick knew that the application which he submitted contained false statements.

■ The district court properly denied Mydanick's second request. The jury did not need to find that the finders' fee was to be paid out the loan proceeds, for that was not an essential element of the conspiracy of defrauding the United States and making false statements to the SBA. *See United States v. Rodriguez*, 545 F.2d 829, 831 (2d Cir. 1976), *cert. denied*, 434 U.S. 819, 98 S.Ct. 58, 54 L.Ed.2d 74 (1977).[4]

Affirmed.

---

4. We do not address Mydanick's other challenge to the sentencing procedure—that the district court unduly penalized Mydanick because he is a lawyer.