STATE OF CONNECTICUT *v*. MICHAEL C. REDDICK
(10500)

LANDAU, HEIMAN and SCHALLER, Js.

Argued September 20—decision released December 28, 1993

*Paul M. Vogt,* special public defender, with whom, on the brief, were *Sally S. King* and *Matthew J. Cholewa,* special public defenders, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *C. Robert Satti, Jr.,* assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4).[1]

On appeal the defendant asserts that the trial court improperly (1) allowed into evidence an impermissibly suggestive in-court identification of the defendant, (2) refused to order the state to produce the transcript of testimony given by a witness in a prior prosecution involving this defendant in a different judicial district,

---

[1] General Statutes § 53a-134 provides in pertinent part: "(a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm, except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. . . ."

General Statutes § 53a-133 provides: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

(3) permitted the jury, on the issue of identity, to consider evidence of the defendant's involvement in another bank robbery, (4) admitted into evidence, as an indication of consciousness of guilt, the fact of the defendant's flight, (5) denied his motion for acquittal made at the completion of all of the evidence, (6) conducted itself in such a manner, throughout the trial, so as to deny the defendant his constitutionally guaranteed right to due process of law, and (7) restricted the cross-examination of a witness, thus preventing him from eliciting evidence of the bias or prejudice of the witness. The defendant further asserts that the aggregate effect of the trial court's improper actions "deprived [him] of his right to a fair trial" and was not harmless error. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On January 24, 1990, at about 1:15 p.m., two black males entered a Connecticut National Bank branch at 1334 Main Street in Stratford. When they entered the bank, there were no customers on the premises. One of the men was in his early twenties, about six feet in height and weighed about 150 pounds. His face was long and oval, and he had some hair on the sides of his cheeks and a light complexion. The second was older, about five foot seven or eight inches tall, and weighed about 180 pounds. He had pudgy cheeks and acne scars. He had darker skin than the other individual.

The shorter man approached Patricia Baptist, who was employed as a teller, and asked whether the bank had savings incentives for college. At that time, the taller male stood behind and to the left of the shorter male. In response to the question, Baptist indicated that the man would have to speak with a bank officer at the front of the lobby and pointed to the area where the officers' desks were located. Both men left the area of

the tellers' station and walked in the direction that had been indicated by Baptist. Shortly thereafter, they returned to the tellers' station and the shorter man again asked Baptist about the existence of savings incentives for college. She again referred them to the officers' platform and both men left the area of the tellers' station, again going toward the officers' platform.

The two men again approached Baptist and this time the shorter man asked Baptist a question relating to savings and bonds for college tuition. At that point, the men stood next to each other at her station. She told him that the bank offered something like that but that he would still have to talk with one of the officers. The shorter man stepped aside and said to the taller man, "Why don't you do your business here?" The taller man moved directly in front of Baptist and said, "This is a robbery." Baptist saw that he was holding a silver colored gun in front of his chest with his right hand.

Baptist unlocked her money drawer and pulled a packet of "bait money"[2] that activated a silent alarm. She proceeded to hand loose bills to the taller man. The shorter man stepped up next to the taller man, looked at the money and said that he wanted fifties and hundreds. Baptist then proceeded to hand the shorter man $500 in strapped $1 bills. He dropped the packet back over the counter, again stating that he wanted fifties and hundreds. Warning Baptist that they did not want any smoke bombs or alarms, the two men left the bank. Baptist reported what had occurred and the police and Federal Bureau of Investigation were notified of the robbery.

---

[2] Baptist described bait money as "marked $5 bills, and $100 bills, in a $100 strap, that is clipped into a money clip [and] activates a silent alarm" when it is pulled out of the money drawer.

On the day of the robbery, Baptist examined a number of mug shots at the Stratford police station but was unable to identify anyone as the bank robbers. On January 31, 1990, the police showed Baptist an array of photographs from which she identified both men. The photograph of the shorter man was that of the defendant, while the photograph of the taller man was that of Edward Singer.

On February 7, 1990, West Haven police went to the defendant's residence to arrest him for another bank robbery in West Haven committed one hour before the Stratford robbery. At the time of that arrest, the defendant attempted to flee. At the time of the attempted flight, the police had not yet advised the defendant of the crime for which they attempted to make the arrest.

The jury returned a verdict of guilty and the defendant filed motions for judgment of acquittal and for a new trial, both of which were denied by the trial court. This appeal followed.

I

The defendant first asserts that the trial court improperly permitted Baptist to make an in-court identification of the defendant. The following additional facts are necessary to a proper resolution of this claim.

At trial, during June, 1991, the prosecutor asked Baptist to look around the courtroom and see whether she recognized anyone as having been in the bank on January 24, 1990. She indicated that she could not really tell.[3] She further testified that the police showed her

---

[3] The question and answer concerning the preliminary attempt at identification were as follows:

"[State's Attorney]: Okay. Now, I would like you to look around the courtroom today, and see if you recognize any of the parties that were in your bank on the date of January 24 of 1990?

"[Baptist]: I really can't tell."

photographs at the police station on the day of the robbery and she was unable to identify the robbers from among the photographs. She also stated that on January 31, 1990, a detective brought a photographic array to her place of employment. On that day, she identified one of the photographs as that of the defendant. She further identified a series of photographs, taken by the surveillance cameras at the bank on the day of the robbery, that showed her and the two robbers. The state requested that the court require the defendant to approach the witness stand for the purpose of asking the witness about the defendant's physical characteristics. The defendant stated that he had no objection to that procedure. In the absence of the jury, the trial court instructed the sheriff to remove the defendant's leg irons and his glasses, "because [the state was] asking him to appear the way he appeared that day." Baptist told the jury that the shape of the defendant's head, his cheeks and nose were similar to those of the robber, and that his height and weight were similar. She also testified that his face was similar to the face of the shorter robber. The prosecution finally asked whether she could then say that it was the defendant that she saw on January 24, 1990. Over the defendant's objection that the question had been asked and answered, she responded that the defendant was the person that she saw in the bank.

The defendant claims that the trial court abused its discretion in allowing Baptist to make her in-court identification of the defendant, and violated his constitutional rights.[4] The defendant claims that (1) Baptist had

---

[4] We note that no claim was made that Baptist's out-of-court identification of the defendant was unnecessarily suggestive or otherwise violative of the defendant's rights. See *Neil* v. *Biggers,* 409 U.S. 188, 199, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972); *State* v. *Williamson,* 206 Conn. 685, 693, 539 A.2d 561 (1988); *State* v. *Plaza,* 23 Conn. App. 543, 547, 583 A.2d 995 (1990),

already indicated her inability to identify him, (2) she identified the defendant while holding the photographic array, which suggested to her the identity of the defendant, and (3) the trial court's statement, in the absence of the jury, "because you are asking him to appear as he appeared that day," indicated to the witness that the trial court believed the defendant was one of the robbers. We are unpersuaded.[5]

The defendant neither moved to strike the evidence of which he now complains, nor objected to the in-court identification other than on the ground that the question had been asked and answered. "We review evidentiary rulings solely on the ground on which the party's objection is based." *State* v. *Ulen,* 31 Conn. App. 20, 27, 623 A.2d 70, cert denied, 226 Conn. 905, 625 A.2d 1378 (1993); *State* v. *Baldwin,* 224 Conn. 347, 362, 618 A.2d 513 (1993); *State* v. *Dukes,* 29 Conn. App. 409, 416, 616 A.2d 800 (1992), cert. denied, 224 Conn. 928, 619 A.2d 851 (1993).

Under our law, the trial court is vested with wide and liberal discretion in determining the admissibility of evidence claimed to be repetitious, remote or irrelevant. See *State* v. *Devanney,* 12 Conn. App. 288, 291, 530 A.2d 650 (1987). "On appeal, we are limited in our review to a determination of whether, under the circumstances of the case, the trial court, in exercising its broad discretion, could legally act as it did, and we will not intervene unless there is a clear abuse of the

cert. denied, 217 Conn. 811, 587 A.2d 153 (1991). Thus, no attack is made concerning the out-of-court identification by Baptist nor against her identification of the photographic array from which she made her out-of-court identification nor the identification made from the video photographs taken by the surveillance cameras at the time of the robbery.

[5] We note at the outset that nothing in the record indicates that Baptist was looking at the photographic array when she made the identification. Even if she were, it would not avail the defendant.

court's discretion." Id. Our examination of the record fails to disclose any abuse of discretion on the part of the trial court. The record reveals that the witness answered the original question, whether she could identify anyone in the courtroom as having been involved in the robbery, by saying that she could not really tell. After she had reviewed the surveillance photographs and the photographic array that she had previously seen, and after examining the defendant close up without his glasses, she then testified that she was able to identify the defendant as one of the perpetrators of the bank robbery. The trial court did not abuse its discretion in overruling the defendant's objection on the ground claimed by the defendant.

As a second string to his bow, the defendant asserts that the procedure under which Baptist identified him was unconstitutional. The defendant asserts that the remark of the trial court had the effect of influencing her identification. Further, the defendant claims that the remark placed him in the position that if he pursued this line on cross-examination, damaging information would have been disclosed to the jury. He posits that this resulted in a deprivation of his fifth amendment rights under the federal constitution. The defendant has not provided us with either an analysis to support the claim or citation of authority to support his thesis.

We first note that the defendant failed to raise this issue properly before the trial court either at trial or by posttrial motions. At trial, the defendant objected only to the claimed repetitive nature of the identification question. In the posttrial motion for judgment of acquittal, the defendant claimed only that the identification of the defendant was contradicted by various witnesses.[6] We also note that the defendant does not seek

---

[6] In his postverdict motion for judgment of acquittal, the defendant, in discussing his claim regarding identification, alleged that "[t]he issue of

the review of this court under the doctrine of *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). Thus, the defendant has failed to provide us with the requisite legal record on which to afford review. Even had the defendant perfected the record, however, the claim would be to no avail.

"The United States Supreme Court has set standards as to when a pretrial identification must be excluded and under what circumstances an in-court identification that follows an impermissible pretrial identification must be excluded. See *Neil* v. *Biggers,* 409 U.S. 188, 200–201, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972); *Coleman* v. *Alabama,* 399 U.S. 1, 5–6, 90 S. Ct. 1999, 26 L. Ed. 2d 387 (1970); *Foster* v. *California,* 394 U.S. 440, 442, 89 S. Ct. 1127, 22 L. Ed. 2d 402 (1969); *Simmons* v. *United States,* 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968); *Stovall* v. *Denno,* 388 U.S. 293, 297, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967); *Gilbert* v. *California,* 388 U.S. 263, 272, 87 S. Ct. 1951, 18 L. Ed. 2d 1178 (1967); *United States* v. *Wade,* 388 U.S. 218, 241, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967). The court, however, has not set any guidelines for in-court identification procedures or indicated that in-court identifications must be made in a way that is not suggestive. *United States* v. *Domina,* 784 F.2d 1361, 1368 (9th Cir. 1986). Generally, an in-court testimonial identification need be excluded, as violative of due process, only when it is tainted by an out-of-court identification procedure which is unnecessarily suggestive and conducive to irreparable misidentification. *United States* v. *Domina,* supra, 1368; *State* v. *Nelson,* 4 Conn. App. 514, 516, 495 A.2d 298 (1985); *Fortune* v. *State,* 549 P.2d 380, 383 (Okla. Crim. App. 1976). 'The

identification is speculative at best in view of the contradictory testimony of the various witnesses to the Connecticut National Bank robbery."

Supreme Court has not extended its exclusionary rule to in-court identification procedures that are suggestive because of the trial setting.' *United States* v. *Domina,* supra, 1369. 'There is no constitutional requirement that an in-court identification confrontation be conducted as a lineup or be otherwise free of suggestion. An in-court testimonial identification must be excluded if it is the product of an out-of-court confrontation arranged by the state, which was unnecessarily suggestive and conducive to irreparable misidentification.' *Commonwealth* v. *Wheeler,* 3 Mass. App. 387, 391, 331 N.E.2d 815 (1975). '[W]ithout more, the mere exposure of the accused to a witness in the suggestive setting of a criminal trial does not amount to the sort of impermissible confrontation with which the due process clause is concerned.' *Middletown* v. *United States,* 401 A.2d 109, 132 (D.C. App. 1979).

" 'We know of no authority which would prohibit, as unduly suggestive, an exclusively in-court identification. *Mangrum* v. *State,* 155 Ga. App. 334, 335, 270 S.E.2d 874 (1980).' *State* v. *Nelson,* supra, 516. The defendant's protection against the obvious suggestiveness in any courtroom identification confrontation is his right to cross-examination. *Laury* v. *State,* 260 A.2d 907, 909 (Del. 1969); *State* v. *Drew,* 360 So. 2d 500, 516 (La. 1978); *Cooper* v. *State,* 599 P.2d 419, 422 (Okla. Crim. App. 1979); see *Manson* v. *Brathwaite,* 432 U.S. 98, 113 n.14, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977). The innate weakness in any in-court testimonial identification is grounds for assailing its weight rather than its admissibility. *In re W.K.,* 323 A.2d 442, 444 (D.C. App. 1974).

"The manner in which in-court identifications are conducted is not of constitutional magnitude but rests within the sound discretion of the trial court. *United States* v. *Satterfield,* 572 F.2d 687, 690 (9th Cir. 1978);

*United States* v. *Williams,* 436 F.2d 1166, 1168 (9th Cir. 1970); *United States* v. *King,* 433 F.2d 937, 938 (9th Cir. 1970); *People* v. *Powell,* 105 App. Div. 2d 712, 714, 481 N.Y.S.2d 157 (1984); see *United States* v. *Williams,* 704 F.2d 315, 319 (6th Cir. 1983)." *State* v. *Smith,* 200 Conn. 465, 469–70, 512 A.2d 189 (1986); *State* v. *Wooten,* 227 Conn. 677, 697, 631 A.2d 271 (1993); *State* v. *Rose,* 29 Conn. App. 421, 429, 615 A.2d 1058, cert. denied, 224 Conn. 928, 618 A.2d 529 (1992).

The defendant's claim is without merit.

## II

The defendant next asserts that "[t]he trial court committed constitutional error in not ordering the prosecution to produce the transcript of testimony given by Bernilda Lopez from a previous trial." We disagree.

Certain additional facts are necessary to a proper resolution of this claim. On January 24, 1990, Lopez was employed at the West Haven office of the Bank of Boston, Connecticut. On that date, a robbery occurred at that bank branch shortly after the robbery in this case. The trial court admitted evidence of the West Haven robbery under the similar crimes theory and for identification purposes.

Upon completion of the direct examination of Lopez, the defendant sought production of any statements given by the witness with respect to the West Haven robbery. The state's attorney produced a statement given by Lopez to the West Haven police. The defendant called to the trial court's attention the fact that Lopez had testified in a prior trial involving the West Haven robbery, and the defendant requested that the state's attorney produce the transcript of the testimony of the witness. The state's attorney responded that he

was uncertain whether the entire transcript had been transcribed by the court reporter, that he had turned over to the defendant's counsel all of the transcript that he had in his possession and that the remainder of the transcript was not in the possession of his office or the office of the state's attorney who had prosecuted the West Haven robbery. Counsel for the defendant conceded that he did not know the status of the transcript and also recognized that he could obtain the transcript from the court reporter.[7]

The trial court found that the testimony of the witness was a statement within the confines of Practice Book § 749.[8] The trial court further found that it was not subject to the production provision of Practice Book § 752[9] because the state did not possess the transcript, a condition precedent to the ordering of its production under that rule of practice. We agree with the trial court.

We first point out that despite the assertion in the defendant's brief that the failure to produce Jencks Act;

[7] In the course of the colloquy between defense counsel and the court, counsel stated in part: "I haven't a clue as to what the status of transcripts are in that particular case." He also stated that "if we were going to basically retry the West Haven case, it essentially involves my requiring a transcript to be obtained from that court. . . ."

[8] Practice Book § 749 provides: "The term statement as used in Sec. 748 means:

"(1) A written statement made by a person and signed or otherwise adopted or approved by him; or

"(2) A stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by a person and recorded contemporaneously with the making of such oral statement."

[9] Practice Book § 752 provides: "After a witness called by the state has testified on direct examination at trial, the judicial authority shall, on motion of the defendant, order the state to produce any statement of the witness in the possession of the state or its agents, including state and local law enforcement officers, which statement relates to the subject matter about which the witness has testified."

18 U.S.C. § 3500 et seq.; type material might be a denial of his sixth amendment rights, he failed to advance this claim before the trial court. We also note that the defendant does not seek the review of this court under the doctrine of *State* v. *Golding,* supra, or under the doctrine of plain error. See Practice Book § 4185. Thus, the defendant fails to provide us with any basis on which we may afford review of this unpreserved claim.

The defendant claims that the trial court misinterpreted the meaning of the phrase "in the possession of the state" as used in Practice Book § 752. He posits that the phrase is not limited to the prosecuting authority or to law enforcement agencies such as the state and local police, but that it must extend as well to agencies that are not under the control of the prosecuting authority, in this case, a court reporter or monitor. We do not agree.

The authority to appoint the official court reporter and the assistants to the court reporter for each judicial district is vested in the judges of the Superior Court.[10] Therefore, the court reporters are officials employed by the judicial branch of government.

The defendant posits that the use of the term "in the possession of the state" extends to the state as a whole, unlimited in its scope and application. He thus asserts that because the court reporter is an employee of the judicial branch, the reporter's notes and transcripts are implicitly in the possession of the state. We do not agree with such an expansive reading and interpretation of the phrase.

---

[10] General Statutes § 51-60 (a) provides: "The judges of the superior court shall appoint one skillful stenographer for each judicial district to be the official court reporter of the superior court therein, and shall appoint as many stenographers to be assistant court reporters for the court as the judges or an authorized committee thereof determines the business of the court requires."

The defendant relies on *Demers* v. *State,* 209 Conn. 143, 547 A.2d 28 (1988), to support his contention that the state is bound to produce the transcript of prior testimony even where the transcript may not have been transcribed or where the court reporter's notes and the transcript are in the possession and control of the reporter, a person over whom the state's attorney may not exercise any control. This reliance is misplaced. In *Demers,* the unproduced report was in the hands of a police department other than the one involved in the prosecution of the criminal action and in a different judicial district. In holding that the failure to produce that report violated the state's duty to disclose, our Supreme Court stated that "[t]he State's duty of disclosure is imposed not only upon its prosecutor, but also on the State as a whole, including its investigative agencies. Therefore, if the [exculpatory material] were held by the . . . police department we would be compelled to conclude that, constructively, the State's attorney had *both access to and control over* the documents. . . ." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 153. Here, while the state had access to the court reporter's notes or a transcript by exercise of the power of subpoena, it did not have control over the material or its custodian. We also note that no claim has been made of the state's concealment of the material, and, in this instance, the material was equally available to the defendant by the use of a subpoena. See *State* v. *Dolphin,* 195 Conn. 444, 455–56, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985).

While the decisions of federal courts of appeals treating questions under the Jencks Act do not control our determination of the meaning of our rules of practice, they are, nonetheless, instructive. The United States Courts of Appeals have consistently held that a court reporter is not an agent of the government for purposes

of the Jencks Act. See, e.g., *United States* v. *Cagnina,* 697 F.2d 915, 922 (11th Cir.), cert. denied, 464 U.S. 856, 104 S. Ct. 175, 78 L. Ed. 2d 157 (1983); *United States* v. *Lurz,* 666 F.2d 69, 79 (4th Cir. 1981), cert. denied, 459 U.S. 843, 103 S. Ct. 95, 74 L. Ed. 2d 87 (1982). "Clearly, the government cannot be required to produce that which it does not control and never possessed or inspected." (Internal quotation marks omitted.) *United States* v. *Hutcher,* 622 F.2d 1083, 1088 (2d Cir.), cert. denied, 449 U.S. 875, 101 S. Ct. 218, 66 L. Ed. 2d 96 (1980). As did the Second Circuit, we reject "a notion of 'possession' which is so elastic as to embrace materials that the prosecution never had in its files [and] never inspected . . . ." Id. We also reject the idea that the state may be charged with producing a court reporter's transcript while in the possession of the court reporter, an appointee of the judges.

The defendant's claim is without merit.

### III

The defendant next asserts that the trial court improperly allowed evidence of the defendant's involvement in another bank robbery to be considered by the jury in this case. We disagree.

Certain additional facts are necessary to a proper resolution of this issue. During trial, the state offered evidence to prove that one hour after the bank robbery in Stratford, a bank robbery occurred at the Bank of Boston's West Haven office. The West Haven robbery was committed by two black males, one tall and light skinned and the other shorter and dark skinned. The shorter of the two approached a customer service representative and asked about the availability of "savings accounts, student loans or student savings accounts, something to that effect." The two individuals left that area and went to the tellers' area. They were then observed rushing from the bank. One of the

employees of the branch was unable to identify the defendant as one of the participants in that robbery while another employee did identify the defendant as a participant.

Over the defendant's objection, the trial court permitted the state to introduce evidence of that robbery to the jury. The trial court found that the evidence was probative of the identification of the accused and of a plan, method or scheme in the commission of criminal acts. The trial court found that the probative value of the evidence outweighed any possible prejudice to the defendant. The trial court examined the similarities between the two crimes and determined that the West Haven robbery occurred about one hour after the Stratford robbery. The trial court found that both robberies were committed by two black males, one shorter than the other with a darker complexion. In both robberies, the robbers made inquiries about student loans and savings accounts, a red Toyota was used as the escape car, Edward Singer was identified as the taller of the two individuals and the defendant was identified as the shorter.

Evidence of the commission of other crimes by a defendant is inadmissible to prove the defendant guilty of the crime charged against him; *State* v. *Talton,* 197 Conn. 280, 289, 497 A.2d 35 (1985); *State* v. *Periere,* 186 Conn. 599, 610, 442 A.2d 1342 (1982); or to show the defendant's bad character or criminal tendencies. *State* v. *Santiago,* 224 Conn. 325, 338, 618 A.2d 32 (1992). "Evidence of [a defendant's prior] misconduct, however, may be allowed for the purpose of proving . . . intent, identity, malice, motive or a system of criminal activity.' . . ." *State* v. *Sierra,* 213 Conn. 422, 428–29, 468 A.2d 448 (1990). Before evidence of prior acts of misconduct are admissible, the trial court must find that such evidence is encompassed in one of the

exceptions and that the probative value of the proffered evidence outweighs its prejudicial effect. Id., 429.

While we recognize that the balancing of the probative value of evidence against its prejudicial effect is inherently difficult, we will reverse a trial court's decision only "when it is manifest that an abuse of discretion or an injustice has occurred." *State* v. *Santiago,* supra, 338–39; *State* v. *Marra,* 215 Conn. 716, 738, 579 A.2d 9 (1990).

Despite the fact that the evidence was admitted for both identity and common scheme, the evidence was more clearly directed at the identification of the defendant as a participant in both robberies through an identification from photographs by an eyewitness and by an in-court identification. Thus, the trial court could have reasonably found that the evidence had significant probative value on the issue of both identification and common scheme, especially where the similarities of the crimes are so striking, a circumstance that makes the evidence that much more probative. See *State* v. *Baldwin,* 224 Conn. 347, 355, 618 A.2d 513 (1993).

The proffered evidence was relevant to both the issue of the identity of the defendant as the perpetrator of the crime charged as well as evidence of a system of common criminal activity. See *State* v. *Cooper,* 227 Conn. 417, 424, 630 A.2d 1043 (1993); *State* v. *Ibraimov,* 187 Conn. 348, 352, 446 A.2d 382 (1982); *State* v. *Lopez,* 14 Conn. App. 536, 538, 541 A.2d 902 (1988).

Here, the trial court carefully weighed and balanced the probative value of the evidence against its prejudicial effect and determined that the prejudice did not outweigh the probative value. Moreover, the trial court gave a limiting instruction at the time that the evidence was received and an in depth instruction at the time of the charge to the jury as to the limitation on the use of the evidence. We recognize that "[e]vidence is preju-

dicial when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." (Internal quotation marks omitted.) *State* v. *Baldwin,* supra, 357. Thus, the trial court ensured the proper use of the evidence for its limited purpose and also acted to ensure that the evidence would not be prejudicial.

Since we have concluded that the trial court acted properly in admitting the evidence, we need not address the additional issue concerning the transcripts of the prior testimony, which was resolved in another section of this opinion.[11]

We conclude that the trial court acted properly and did not abuse its discretion in determining that the probative value of the testimony outweighed any prejudicial effect that it might have on the jury.

## IV

The defendant next asserts that the trial court acted improperly in admitting into evidence testimony concerning the defendant's attempted flight as consciousness of guilt. We disagree.

Certain additional facts are necessary to a proper resolution of this issue. On the day of the robbery, a member of the West Haven police department, together with Singer, went to a residence in Hamden. Two days later, they returned to the same residence in Hamden, and this time spoke with Maxine Reddick. On the same day, they went to a duplex on Shelton Avenue in New Haven. They did not find the defendant there at that time. The West Haven police returned to the Shelton Avenue address on several other occasions between January 26 and February 6, 1990, but did not see the defendant.

---

[11] See part II.

On February 7, West Haven police officers accompanied by a New Haven police officer returned to the Shelton Avenue building, entered and went to the third floor. They were holding an arrest warrant for the defendant. One of the officers knocked on the door of the apartment and announced that it was the police with a warrant. The defendant jumped out of a window to an adjacent rooftop and was apprehended and taken into custody by officers stationed outside of the building. At the time that the defendant attempted to evade being taken into custody, the officers had not yet advised him as to the nature of the warrant that they were holding. The warrant had been issued in connection with the West Haven bank robbery. The defendant had, on January 31, 1990, been positively identified as a participant in the Stratford robbery.

The trial court, over the objection of the defendant, admitted the evidence of the defendant's attempted flight as evidence of consciousness of guilt.

"Flight, when unexplained, tends to prove a consciousness of guilt." (Internal quotation marks omitted.) *State* v. *Rosa,* 170 Conn. 417, 432–33, 365 A.2d 1135, cert. denied, 429 U.S. 845, 97 S. Ct. 126, 50 L. Ed. 2d 116 (1976); *State* v. *Davis,* 32 Conn. App. 21, 36, 628 A.2d 11 (1993). Flight is in the nature of circumstantial evidence. *State* v. *Piskorski,* 177 Conn. 677, 723, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979); *State* v. *Davis,* supra. Thus, "all that is required is that the evidence have relevance, and the fact that ambiguities or explanations may exist which tend to rebut an inference of guilt does not render evidence of flight inadmissible but simply constitutes a factor for the jury's consideration." *State* v. *Piskorski,* supra.

Here, the police merely indicated that they had a warrant. They did not announce for whom the warrant had

issued or the crime for which the person named therein was to be arrested. There was no direct evidence that anyone had told the defendant that the police were looking for him. The conduct of the police, however, gave rise to a permissible inference that the defendant had knowledge of the interest of the police in his whereabouts. We cannot say that the evidence of the defendant's conduct, in attempting to leave through a third floor window, was irrelevant to the issue of consciousness of guilt. See id., 723–24.

The defendant asserts for the first time on appeal that the trial court did not perform a balancing test to determine whether the prejudicial value of the evidence of flight outweighed its probative value. A review of the record reveals that this issue was not raised before the trial court. We decline to afford review of this unpreserved claim.[12]

The trial court acted properly and did not abuse its discretion in admitting the evidence of flight.

## V

The defendant next asserts that the trial court improperly denied the defendant's motion for acquittal, made at the completion of the defendant's case. The defendant asserts that the evidence was insufficient for the jury to find that the defendant was a participant in the robbery because his identification was based on contradictory testimony. The defendant then posits that "[b]ecause the jury could not have reasonably credited that testimony, its verdict cannot stand, and Reddick is constitutionally entitled to an acquittal." The defendant provides us with no authority for this constitutional assertion. "Robing garden variety claims [such as

---

[12] Practice Book § 4185 provides in pertinent part: "The court on appeal shall not be bound to consider a claim unless it was distinctly raised at trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

insufficiency of evidence] in the majestic garb of constitutional claims does not make such claims constitutional in nature." *State* v. *Ulen,* 31 Conn. App. 20, 37, 623 A.2d 70 (1993).

We disagree with the assertion that the evidence was insufficient to warrant the jury's concluding beyond a reasonable doubt that the defendant was properly identified as a participant in the robbery.

Baptist identified a photograph of the defendant as that of one of the robbers several days after the incident. Further, she identified a series of surveillance photographs taken on the date of the robbery as being of the person who had committed the robbery. Additionally, after having first indicated that she was unable to identify anyone in the courtroom as a participant in the robbery, she identified the defendant as one of the robbers when he was presented before her, close up and without his glasses. Her testimony was subject to cross-examination, had the defendant desired to exercise that right.

When we are called on to review a sufficiency of the evidence claim, we impose a two part analysis. We first construe the evidence in the light most favorable to sustaining the verdict. *State* v. *Salz,* 226 Conn. 20, 31, 627 A.2d 862 (1993); *State* v. *Rivera,* 32 Conn. App. 193, 200–201, 628 A.2d 996, cert. denied, 227 Conn. 920, 632 A.2d 698 (1993); *State* v. *Hooks,* 30 Conn. App. 232, 238, 619 A.2d 1151, cert. denied, 225 Conn. 915, 623 A.2d 1025 (1993). We next determine whether, from that evidence and all the reasonable inferences that flow from the evidence, a trier of fact could reasonably find that the defendant was guilty beyond a reasonable doubt. *State* v. *Salz,* supra; *State* v. *Rivera,* supra.

It is the sole right of the jury as the trier of the facts to draw all reasonable and logical inferences from the facts as it finds them to exist. *State* v. *Gray,* 221 Conn.

713, 721, 607 A.2d 391, cert. denied, U.S. , 113 S. Ct. 207, 121 L. Ed. 2d 148 (1992); *State* v. *Rivera,* supra, 201. It is also the absolute right and responsibility of the jury to weigh conflicting evidence and to determine the credibility of the witnesses. *State* v. *Pinnock,* 220 Conn. 765, 778–79, 601 A.2d 521 (1992); *State* v. *Rivera,* supra. Thus, the issue of the identification of the defendant as the perpetrator of the crime is peculiarly an issue of fact to be resolved by the jury. *State* v. *Rivera,* supra. "If evidence, whether direct or circumstantial, should convince a jury beyond a reasonable doubt that an accused is guilty, that is all that is required for a conviction." *State* v. *Smith,* 138 Conn. 196, 200, 82 A.2d 816 (1951); *State* v. *Rivera,* supra, 202.

"The test for determining whether the evidence is sufficient to sustain a verdict is thus whether the [trier of fact] could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt. . . ." (Internal quotation marks omitted.) *State* v. *Rivera,* supra, quoting *State* v. *Haddad,* 189 Conn. 383, 387, 456 A.2d 316 (1983).

As we have stated, the issue of whether the defendant in fact perpetrated the crime was an issue of fact to be resolved by the jury. *State* v. *Rivera,* supra. The jury had before it the evidence of the unequivocal and certain identification from the photographic array of the defendant made two days after the robbery. The jury also had before it Baptist's response to the inquiry of the state's attorney that she could not really tell if the perpetrator was in the courtroom. The jury also had before it her decisive identification of the defendant made when she had the opportunity to view him close up without his glasses. Thus, the jury was in a unique position to determine the credibility of Baptist

as well as the factual basis for her identification of the defendant as the perpetrator of the crime. The jury had the opportunity to weigh her inability to answer the question about the identity of the defendant at the first request of the state's attorney against her second attempt. In this context, we rely on "the good sense and judgment of American juries to weigh evidence with some element of untrustworthiness since such evidence is customary grist for the jury mill." (Internal quotation marks omitted.) *State* v. *Fullwood,* 193 Conn. 238, 254, 476 A.2d 550 (1984); *State* v. *Rivera,* supra, 203.

The defendant's claim that the evidence was insufficient to identify him as a participant in the commission of the crime is without merit.

## VI

The defendant next argues that the actions of the trial court throughout the trial denied him the constitutional right to due process. We are unpersuaded.

The defendant concedes that this claim was not raised before the trial court. He seeks review of this unpreserved claim under the doctrine of *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). "[W]e hold that a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on

whichever condition is most relevant in the particular circumstances." (Emphasis in original.) Id., 239–40.

We note at the outset that, in one instance of claimed misconduct, the jury was not present and the defendant makes the argument, without foundation, that the witness was somehow influenced by the comment of the trial court. We will not resort to speculation and conjecture as a basis on which to make a factual determination that is not supported by the record. "[A]ny misconduct that occurred outside the presence of the jury could not possibly have had an impact on its verdict." *State* v. *Tatum,* 219 Conn. 721, 742, 595 A.2d 322 (1991). If, in fact, the witness was influenced by any statement made by the trial judge outside of the presence of the jury, such information could have been elicited in cross-examination and used to undermine the credibility of the witness.

We again set forth certain long established principles concerning the obligations and responsibilities of the trial judge in conducting a criminal trial. "Due process requires that a criminal defendant be given a fair trial before an impartial judge and an unprejudiced jury in an atmosphere of judicial calm. . . . Consistent with his neutral role, the trial judge is free to question witnesses or otherwise intervene in a case in an effort to clarify testimony and assist the jury in understanding the evidence so long as he does not appear partisan in doing so." (Citations omitted; internal quotation marks omitted.) Id., 740.

"A trial judge is given great latitude in ensuring that a criminal trial be conducted in a manner that approaches as nearly as possible, an atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding. . . . Given the fact that the trial judge is not simply a referee presiding over a forensic contest, but is a minister of justice, he is, for that pur-

pose, vested with the authority to exercise a reasonable discretion in the conduct of a trial." (Citation omitted; internal quotation marks omitted.) *State* v. *Lucci,* 25 Conn. App. 334, 341, 595 A.2d 361, cert. denied, 220 Conn. 913, 597 A.2d 336 (1991).

We have reviewed each of the claims of alleged misconduct cited by the defendant and conclude that in each of those instances the trial court was properly meeting its obligation to ensure a fair trial.[13] Id.

The defendant's claim is without merit.

## VII

The defendant next claims that the trial court improperly prevented him from eliciting evidence of motive or bias on the part of Baptist, one of the state's principal witnesses.

The defendant concedes that this issue was not properly preserved for appellate review and again seeks review under the doctrine of *State* v. *Golding,* supra.

Certain additional facts are necessary for an understanding of this issue. During cross-examination, Bap-

---

[13] The trial court, in its charge to the jury, carefully set forth the effect of any questions or comments that it may have made during the trial. The trial court charged the jury in pertinent part: "You should not draw any inferences, whatsoever, from any question that I may have asked of any witness in the case. During the course of the trial, I occasionally asked a question of a witness in order to bring out a fact not then, in my judgment, fully covered or explained, if there was some confusion in my mind. Hopefully, it alleviated some that may have coexisted in yours. Do not assume that I hold any opinion on the matters to which any question I may have asked may have been directed. Remember, at all times, that you are the jurors, you are at liberty to disregard all comments of the court in arriving at your own findings as to the facts."

"In the absence of some indication to the contrary, other than conjecture by the defendant, we are constrained to presume that the jurors followed the trial court's instructions . . . ." *State* v. *Gaffney,* 209 Conn. 416, 422, 551 A.2d 414 (1988).

tist was asked questions concerning her employment at the bank. She testified that she had been promoted to senior teller a short time before the robbery occurred. She was then asked whether that level was the highest level to which she could go as a teller. She answered the question in the negative. After the answer had been given, the state interposed an objection.[14]

Nothing in the record supports a claim that the trial court in any way impeded, limited or restricted the

---

[14] After the question had been answered in the negative by the witness the following occurred:

"[Assistant State's Attorney]: Objection, at this point, relevancy.

"[Defense Counsel]: Bias.

"The Court: Bias?

"[Defense Counsel]: Yes

"The Court: In what respect?

"[Defense Counsel]: In respect to affinity to the employer, apparently.

"The Court: To what? How do you tie it into whether or not a gun was transferred from one to another?

"[Defense Counsel]: Absolutely not, Your Honor.

"The Court: What is it?

"[Defense Counsel]: The references we have heard the witness testify as to following the bank procedures.

"The Court: Yes.

"[Defense Counsel]: Most, and apparently minimizing the fear for herself.

"The Court: Right.

"[Defense Counsel]: My question is what status she occupied in the bank to put the bank ahead of herself.

"The Court: Because of her concern for her own and her coworkers welfare, and those of others, correct?

"[Defense Counsel]: I would hope that is what the witness would testify to.

"The Court: Well, that is what she already said, and I think it's collateral because fear is not an ingredient of an armed robbery, not at first—

"[Defense Counsel]: But it is an ingredient of an ability to articulate and remember.

"The Court: That may be, but it's not an essential element of the offense, so it does not have to be fear. She has testified to her fear. I think we will take a lunch break and come back at 2:00, 2:05, whenever we are all here. . . ."

Upon the resumption of the trial after the luncheon recess, the testimony resumed with neither a motion to strike the answer nor any ruling by the trial court.

cross-examination of Baptist. The question to which the state interposed a late objection had been answered and no motion to strike the answer was ever made. Consequently, the answer stood. Contrary to the assertion in the defendant's brief, the record is devoid of any objection by the state to a line of questioning and the record is equally devoid of any indication on the part of the trial court that it was making any ruling whatsoever, let alone a ruling designed to foreclose an avenue of inquiry.

In this instance, the defendant cannot satisfy the first *Golding* prong and is thus not entitled to review. Id., 239.

The defendant's claim is without merit.

## VIII

Finally, the defendant asserts that even if none of his claims is sufficient individually to require a reversal of his conviction, the cumulative effect of all of the claimed improper actions by the trial court is sufficient to mandate a conclusion that the defendant's right to due process has been violated.

We note at the outset that the defendant fails to supply us with legal precedent or an analysis under either the state or federal constitutions to support this assertion. We also note that we have considered separately each of the claims made by the defendant and have found them to be without merit.

Our Supreme Court has rejected a claim that a group of instructional claims of error, none of which was found to constitute reversible error, should be aggregated to form a separate basis for a claim of a constitutional violation of a right to a fair trial; *State* v. *Tillman*, 220 Conn. 487, 505, 600 A.2d 738 (1991), cert. denied, U.S. , 112 S. Ct. 3000, 120 L. Ed. 2d 876 (1992); and also rejected a claim that the cumula-

tive effect of a variety of alleged improprieties should be the basis of a claim of constitutional violation; *State* v. *Robinson,* 227 Conn. 711, 747, 631 A.2d 288 (1993). We also reject as untenable the creation of "a new constitutional claim in which the totality of alleged constitutional error is greater than the sum of its parts." *State* v. *Robinson,* supra, 747.

The judgment is affirmed.

In this opinion the other judges concurred.