[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
STATE OF CONNECTICUT v. MICHAEL C. REDDICK
 Date of Sentence July 12, 1991 Date of Application July 12, 1991 Date Application Filed July 12, 1991 Date of Decision April 23, 2002
Application for review of sentence imposed by the Superior Court, Judicial District of Fairfield.
Docket No. CR 2-48684
David Rozwaski Defense Counsel, for Petitioner
Joseph Corradino Assistant State's Attorney, for the State.
Sentence Affirmed.
 BY THE DIVISION
The petitioner's right to sentence review was not properly preserved however, on April 10, 2000, his right to sentence review was restored by habeas corpus proceedings.
Reddick was convicted, following a jury trial, of robbery, first degree and sentenced to a term of twenty years, execution suspended after fifteen years, with five years of probation. This sentence was imposed consecutive to a previously imposed sentence of twenty-five years (imposed on May 3, 1991 in the Judicial District of Ansonia/Milford following a conviction after a jury trial on a charge of robbery 2nd
degree as a persistent felony offender). That earlier sentence is not before us for consideration at this time.
The factual basis for this conviction was a robbery at gun point of a bank in Stratford committed by Reddick and a co-defendant, Edward Singer. Detailed factual findings are reported in State v. Reddick, 33 Conn. App. 311-314-316 (1993), as follows:
 On January 24, 1990, at about 1:15 p. m., two black males entered a Connecticut National Bank branch at 1334 Main Street in Stratford. When they entered the bank, there were no customers on the premises. One of the men was in his early twenties, about six feet in height and weighed about 150 pounds. His face was long and oval, and he had some hair on the sides of his cheeks and a light complexion. The second was older, CT Page 6757 about five foot seven or eight inches tall, and weighed about 180 pounds. He had pudgy cheeks and acne scars. He had darker skin than the other individual.
 The shorter man approached' Patricia Babtist, who was employed as a teller, and asked whether the bank had savings incentives for college. At that time, the taller man stood behind and to the left of the shorter male. In response to the question, Babtist indicated that the man would have to speak with a bank officer at the front of the lobby and pointed to the area where the officers' desks were located. Both men left the area of the tellers' station and walked in the direction that had been indicated by Babtist. Shortly thereafter, they returned to the tellers' station and the shorter man again asked Babtist about the existence of savings incentives for college. She again referred them to the officers' platform and both men left the area of the tellers' station, again going toward the officers' platform.
 The two men again approached Babtist and this time the shorter man asked Babtist a question relating to savings and bonds for college tuition. At that point, the men stood next to each other at her station. She told him that the bank offered something like that but that he would still have to talk with one of the officers. The shorter man stepped aside and said to the taller man, "Why don't you do your business here?" The taller man moved directly in front of Babtist and said, "This is a robbery." Babtist saw that he was holding a silver colored gun in front of his chest with his right hand.
 Babtist unlocked her money drawer and pulled a packet of "bait money" that activated a silent alarm. She proceeded to hand loose bills to the taller man. The shorter man stepped up next to the taller man, looked at the money and said that he wanted fifties and hundreds. Babtist then proceeded to hand the shorter man $500 in strapped $1 bills. He dropped the packet back over the counter, again stating that he wanted fifties and hundreds. Warning Babtist that they did not want any smoke bombs or alarms, the two men left the bank. Babtist reported what had occurred and the police and Federal Bureau of Investigation were CT Page 6758 notified of the robbery.
 On the day of the robbery, Babtist examined a number of mug shot at the Stratford police station but was unable to identify anyone as the bank robbers. On January 31, 1990. the police showed Babtist an array of photographs from which she identified both men. The photograph of the shorter man was that of the defendant, while the photograph of the taller man was that of Edward Singer.
 On February 7, 1990, West Haven police went to the defendant's residence to arrest him for another bank robbery in West Haven committed one hour before the Stratford robbery. At the time of that arrest, the defendant attempted to flee. At the time of the attempted flight, the police had not yet advised the defendant of the crime for which they attempted to make the arrest.
Counsel for the petitioner takes issue with some of the conclusions in the pre-sentence report which he claims gave the sentencing court the wrong impression of the petitioner, including misstatements about his work history, that he had few skills which would allow him to function in the community as a law abiding citizen, and that he had become a threat to the safety and welfare of others. He has submitted a memorandum in support of his application outlining Reddick's participation in academic, religious and counseling activities since being sentenced. He argues that, although this progress was made post sentencing, it indicates the hope for rehabilitation, despite the contrary conclusions in the pre-sentence report.
The reality is, however, that at the time of sentencing Reddick had a serious criminal record going back twenty years, which included burglary, second degree; burglary, third degree (two counts) two robbery first degree charges in 1973 with a sentence of five to ten years, two robbery, second degree, another robbery first degree and assault of a victim over age sixty in 1980, with a nine to eighteen year sentence, two counts of assault, second degree in 1983, and the aforementioned Ansonia/Milford robbery second degree as a persistent felony offender. (That crime was also a bank robbery at gun point).
In his comments to this Division, Reddick articulately expressed shame at his record. The sentencing court was perplexed as to why he was a career criminal, but in the final analysis he was clearly a continuing threat and dangerous in the community. When public protection becomes the CT Page 6759 primary focus for imposing a sentence, as it did in this case, a lengthy sentence is warranted. Also, there is no requirement that co-defendants receive similar sentences. Reportedly the co-defendant in this case, who pleaded guilty received a lesser sentence, but we know nothing of his background and our focus is on the petitioner. Clearly, when one accepts responsibility by pleading guilty, it is an indication that rehabilitation becomes a more likely consideration.
Our scope of review is in accordance with the provisions of § 43-28
of the Rules of Practice. We do not find the sentence to be inappropriate or disproportionate and it is affirmed.
___________________
___________________
___________________
Klaczak, Norko and Miano, J's, participated in this decision.