STATE OF CONNECTICUT *v.* ALEXANDER
KETCHUM
(AC 12472)

Dupont, C. J., and Landau and Hennessy, Js.

Argued February 24—officially released May 27, 1997

*Elizabeth A. Gallagher*, for the appellant (defendant).

*Carolyn K. Longstreth*, assistant state's attorney, with whom were *Michael Pepper*, assistant state's attorney, and, on the brief, *Michael Dearington*, state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Alexander Ketchum, appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1), conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-59 (a) (1), robbery in the first degree as an accessory in violation of General Statutes §§ 53a-8 and 53a-134 (a) (3), and conspiracy to commit robbery in the first degree in violation of General Stat-

utes §§ 53a-48 (a) and 53a-134 (a) (3). On appeal, the defendant claims that the trial court improperly (1) refused to allow a photograph of a third party look-alike into evidence, (2) denied access to the psychiatric records of the victim, (3) denied the motion to dismiss one of two conspiracy counts, and (4) denied the defendant's motions for acquittal and for a new trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On October 31, 1989, the victim, Billy McClain, while walking on Kensington Street in New Haven, was approached from behind by approximately seven males who ranged in age from seventeen to twenty years. One of the men asked the victim if he wanted to buy "ghostbusters," which the victim understood to refer to cocaine. The victim declined the offer and continued walking. Shortly thereafter, the same group of men ran up behind the victim and began beating him with a two by four. One of the men in the group said, "Let's take his money." The men continued to beat the victim with the two by four, a plastic garbage can, a piece of iron bed frame and their fists. The man hitting the victim with the garbage can was standing very close to the victim. The victim thought he heard one of the men address the man with the garbage can and say, "It's your turn, Chauncey." During the attack, after someone in the group demanded money, the victim handed over the $2 he had in his pocket. The men then attempted to remove the victim's clothes but were unsuccessful. They also put a powdery substance in the victim's mouth, which was later identified as cocaine.

After the assault, the victim went home. A family member called an ambulance and he was subsequently taken to a hospital. A police officer was dispatched to the hospital but a report was not filed at that time because the victim did not give a statement. During the months following the attack, the victim saw the person

who he thought was named Chauncey on three occasions. He did not formally file a complaint until approximately eight months after the incident because he feared retaliation. On June 20, 1990, the victim went to the police station, looked through several trays of photographs and identified the defendant as one of his assailants.

I

The defendant first claims that the trial court improperly refused to admit into evidence a photograph to show that a third party look-alike might have committed the crime. He argues that the identity of the assailant was essentially the sole issue at trial and that, as part of his defense, it was critical that he be allowed to introduce evidence that indicated that a third party committed the crime with which he was charged.

In his offer of proof, the defendant argued that the victim testified that the person he identified as the defendant had been called "Chauncey" by other people involved in the assault, that Chauncey Evans, known to be a violent person involved in gang related shootings, was in the neighborhood during the days surrounding the time of the assault, and that the defendant and Chauncey Evans were of similar height, hair styles and facial features. Given the unusualness of the name Chauncey and the look-alike photograph, the defendant maintains that the court should have allowed the photograph into evidence.

The state argues that although the victim heard one of the attackers say, "Chauncey, it's your turn" and thought that the person was referring to the defendant, the victim did not know the defendant and was not certain that the defendant was named Chauncey. The state further contends that the defendant and Chauncey Evans do not look alike: Evans appears older than the defendant, has a lighter complexion and a large scar

on his forehead, and, while Evans' chin is pointed, the defendant's chin is square.

A defendant may introduce evidence that indicates that a third party, and not the defendant, committed the crime with which the defendant is charged. *State v. Burge*, 195 Conn. 232, 252, 487 A.2d 532 (1985). The defendant, however, must show some evidence that directly connects a third party to the crime with which the defendant is charged. *Siemon v. Stoughton*, 184 Conn. 547, 555, 440 A.2d 210 (1981); *State v. Giguere*, 184 Conn. 400, 405, 439 A.2d 1040 (1981).

"The presentation and admissibility of such evidence is governed by the rules of relevancy. . . . We have often stated that [e]vidence is admissible when it tends to establish a fact in issue or to corroborate other direct evidence in the case. . . . One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable. . . . Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of the issue. Evidence is admitted, not because it is shown to be competent, but because it is not shown to be incompetent. No precise and universal test of relevancy is furnished by the law, and the question must be determined in each case according to the teachings of reason and judicial experience. . . . Although the trial court has wide discretion in its rulings on the relevancy of evidence . . . its rulings will be reversed if the court has abused its discretion or where injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *State v. Echols*, 203 Conn. 385, 393, 524 A.2d 1143 (1987).

In the present case, it does not appear that the court abused its discretion or that injustice has been done.

The victim was face to face with a man while being beaten with a garbage can. Several other men, not necessarily the defendant, were present who could have been named "Chauncey." The victim saw his attacker several times in the neighborhood during the months following the assault. He also identified the defendant as his attacker from a police department book of photographs. There was no evidence before the court that the third party, Evans, was anywhere near the scene of this crime on the day it took place. Furthermore, there was no evidence before the court that Evans was connected at all with the beating of the victim and the taking of his money. There also was no evidence before the court that the name "Chauncey" yelled out by one of the attackers referred to Chauncey Evans. Without evidence that directly connects the third party with the crime, the defendant could not introduce other evidence, including a photograph of a look-alike that indicates a third party committed the crime. The trial court did not abuse its discretion in excluding the photograph.

## II

The defendant next claims that the trial court improperly denied him access to the victim's psychiatric records. He argues that he was deprived of his right to cross-examination by the trial court's refusal to allow him to question the victim's ability to comprehend, to know and to relate the truth correctly.

The facts surrounding this claim are as follows. After several jurors had been chosen, the state disclosed that a laboratory report pertaining to the victim's medical treatment on the night he suffered his injuries indicated that the victim was taking Prolixin, an antipsychotic drug. The defendant moved for a mistrial on the ground that the untimely disclosure of this information prevented the defendant from questioning prospective jurors on the subjects of mental illness and Prolixin.

The motion was granted. During the new trial, the defendant, who had subpoenaed the victim's psychiatric records, moved to have those records disclosed. The victim consented to a review of his medical and psychiatric records, and the trial court conducted an in camera review.

Both the defendant and the state agree that the court reviewed the medical and psychiatric file and that the information was not made available to the defendant. There is no transcript or record, however, of the court's finding or conclusion. The defendant claims that the court's failure to place its findings on the record deprived him of the opportunity effectively to cross-examine the victim.[1] We disagree.

"It is the appellant's duty to take the necessary steps to provide us with an adequate record for appellate review. Practice Book § 4061; *Holmes* v. *Holmes*, 32 Conn. App. 317, 319, 629 A.2d 1137, cert. denied, 228 Conn. 902, 634 A.2d 295 (1993); *State* v. *Rios*, [30 Conn. App. 712, 715, 622 A.2d 618 (1993)]; *State* v. *Hoeplinger*, 27 Conn. App. 643, 647, 609 A.2d 1015, cert. denied, 223 Conn. 912, 612 A.2d 59 (1992). . . . When our rules of practice are not followed, and the record is not rectified, we are left to guess or speculate as to the existence of a factual predicate. See *Holmes* v. *Holmes*, supra, 319; *State* v. *Rios*, supra, 719–20 (*O'Connell, J.*, concurring)." *State* v. *Rosedom*, 34 Conn. App. 141, 144–46, 640 A.2d 634 (1994). Because it is not our function to find facts, we decline to review this claim.

### III

The defendant next claims that his constitutional right not to be placed in double jeopardy was violated by

---

[1] The defendant did question the victim about his use of Prozac and Prolixin and the effects these drugs had on him. The victim denied that he used Prolixin. The defendant elicited a physician's testimony that Prolixin was found in the victim's urine and that it is used to treat psychosis. It is

his conviction and sentencing for conspiracy to commit robbery in the first degree and conspiracy to commit assault in the first degree. He argues that there was only one conspiracy: to assault the victim as part of the robbery. He also contends that there was double punishment because he was sentenced to a term of incarceration of fifteen years on each of the conspiracy counts. The defendant maintains that the convictions and concurrent sentences, although not adding to any more jail time, resulted in potential adverse collateral consequences such as a delay of his eligibility for parole, a possibility of an increased sentence under a recidivist statute for a further offense or the use of his second conviction to impeach his credibility. The result, he claims, is an impermissible punishment in violation of the double jeopardy clause of the fifth amendment to the United States constitution.

The double jeopardy clause of the fifth amendment to the United States constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." "This clause prohibits not only multiple trials for the same offense but also multiple punishment for the same offense. *Brown* v. *Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977)." *State* v. *John*, 210 Conn. 652, 693, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989).

"Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met. . . ." (Citations omitted; inter-

clear that despite the lack of access to the victim's psychiatric records, the defendant presented evidence to the jury from which it could draw an adverse inference regarding the victim's credibility.

nal quotation marks omitted.) *State* v. *Greco*, 216 Conn. 282, 290–91, 579 A.2d 84 (1990).

"Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one. . . . The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute . . . . For such a violation, only the single penalty prescribed by the statute can be imposed. *Braverman* v. *United States*, 317 U.S. 49, 53–54, 63 S. Ct. 99, 87 L. Ed. 23 (1942); see also *State* v. *Hayes*, 127 Conn. 543, 18 A.2d 895 (1941); *State* v. *Kitt*, 8 Conn. App. 478, 489–90, 513 A.2d 731 (1986), cert. denied, 202 Conn. 801, 518 A.2d 648 (1987)." (Internal quotation marks omitted.) *State* v. *Howard*, 221 Conn. 447, 462, 604 A.2d 1294 (1992). "A single agreement to commit several crimes constitutes one conspiracy. . . . [M]ultiple agreements to commit separate crimes constitute multiple conspiracies." *United States* v. *Broce*, 488 U.S. 563, 570–71, 109 S. Ct. 757, 102 L. Ed. 2d 927 (1989).

In the present case, the state alleged in count three that the defendant agreed with others to beat the victim with dangerous instruments in violation of §§ 53a-48 (a)[2] and 53a-59 (a) (1).[3] The state additionally alleged

---

[2] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[3] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

in count five that the defendant agreed with others to beat the victim and demand his money in violation of §§ 53a-48 (a) and 53a-134 (a) (3).[4] The state claims that the defendant actively beat the victim with a dangerous instrument,[5] thereby committing an overt act in pursuance of the conspiracy to assault in the first degree. Moreover, the state argues that one of the attackers took money from the victim, thereby committing an overt act in pursuance of the conspiracy to commit robbery in the first degree.

The evidence produced at trial established that the victim, shortly after declining to purchase cocaine from a group of young men, was attacked by the men. Members of the group, including the defendant, beat the victim with various instruments. During the assault, the defendant hit the victim with a garbage can and while punching the victim in the face with his fists said, "Why don't you go out," meaning lose consciousness. The defendant heard another member of the group say, "Let's take his money." The victim handed $2 to the attackers after they demanded money. From this evidence, a jury could reasonably find that there were two separate conspiracies. In the first conspiracy, the group of attackers initially agreed to beat the victim with dangerous instruments and did so. After the assault was

---

[4] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (3) uses or threatens the use of a dangerous instrument . . . ."

[5] General Statutes § 53a-3 (7) provides in relevant part: " 'Dangerous instrument' means any instrument, article or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury . . . ."

General Statutes § 53a-3 (4) provides: " 'Serious physical injury' means physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ."

under way, the group then conspired to rob the victim and took $2 from the victim.

## IV

In his final claim, the defendant argues that the court improperly denied his motion for judgment of acquittal. He contends that as a matter of law the state failed to prove him guilty beyond a reasonable doubt. The defendant bases his claim solely on the fact that the victim, who was the only witness to the assault and robbery, was confused about the location and time of the attack and made inconsistent statements about his ability to identify his assailant. He argues that the state failed to prove his guilt beyond a reasonable doubt because the victim's testimony, which was the only evidence connecting the defendant to the alleged crimes, was insufficient and unreliable.

"When we are called on to review a sufficiency of the evidence claim, we impose a two part analysis. We first construe the evidence in the light most favorable to sustaining the verdict. *State* v. *Salz*, 226 Conn. 20, 31, 627 A.2d 862 (1993); *State* v. *Rivera*, 32 Conn. App. 193, 200–201, 628 A.2d 996, cert. denied, 227 Conn. 920, 632 A.2d 698 (1993); *State* v. *Hooks*, 30 Conn. App. 232, 238, 619 A.2d 1151, cert. denied, 225 Conn. 915, 623 A.2d 1025 (1993). We next determine whether, from that evidence and all the reasonable inferences that flow from the evidence, a trier of fact could reasonably find that the defendant was guilty beyond a reasonable doubt. *State* v. *Salz*, supra [31]; *State* v. *Rivera*, supra [200–201]." *State* v. *Reddick*, 33 Conn. App. 311, 332, 635 A.2d 848 (1993), cert. denied, 228 Conn. 924, 638 A.2d 38 (1994).

"It is the sole right of the jury as the trier of the facts to draw all reasonable and logical inferences from the facts as it finds them to exist. . . . It is also the absolute right and responsibility of the jury to weigh conflicting

evidence and to determine the credibility of the witnesses. . . . Thus, the issue of the identification of the defendant as the perpetrator of the crime is peculiarly an issue of fact to be resolved by the jury. . . . The test for determining whether the evidence is sufficient to sustain a verdict is thus whether the [trier of fact] could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt. . . .'' (Citations omitted; internal quotation marks omitted.) Id., 332–33.

Here, the jury had before it the victim's testimony, which contained inconsistencies and demonstrated that the victim was confused at the time of the assault. The jury heard testimony, however, that the victim was face to face with his assailant while he was being attacked. It also heard the victim's decisive identification of the defendant as the assailant. The jury also had before it testimony that the victim had seen his assailant several times between the time of the assault and the photographic identification. Thus, the jury had the opportunity to weigh the inconsistencies and confusion in the victim's testimony with the factual basis for his identification. See *State* v. *Fullwood*, 193 Conn. 238, 254, 476 A.2d 550 (1984). "[W]e rely on the good sense and judgment of American juries to weigh evidence with some element of untrustworthiness since such evidence is 'customary grist for the jury mill.' " Id. The trial court properly concluded that the cumulative effect of the testimony would allow a jury to conclude beyond a reasonable doubt that the defendant was guilty of the crimes as charged.

The judgment is affirmed.

In this opinion the other judges concurred.