## STATE OF CONNECTICUT *v.* JOSHUA C. SMITH
### (AC 16374)

Landau, Schaller and Spear, Js.

Argued March 19—officially released September 9, 1997

*Richard T. Meehan, Jr.*, with whom, on the brief, was *Richard T. Meehan, Sr.*, for the appellant (defendant).

*Judith Rossi*, assistant state's attorney, with whom, on the brief, were *Eugene Callahan*, state's attorney, and *James Bernardi*, assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant appeals[1] from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a (a). The defendant claims that the trial court improperly (1) failed to prohibit, sua sponte, the parties from employing "hypothetical" questions during voir dire, (2) concluded that the evidence presented at trial was sufficient to prove the defendant's guilt beyond a reasonable doubt, and (3) allowed one of the state's witnesses to testify that he believed that an attempt to stab him was based on his status as an eyewitness to the shooting in this case. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On February 11, 1994, the victim, Devon Laidley, and his girlfriend, Tonia McKoy, were at a house at 167 South Main Street in the city of Norwalk. The defendant arrived at the residence, stood on the front porch and engaged in a conversation with a friend, Willis Heron. Subsequently, the victim emerged from the residence and walked down the driveway toward a gate near the front sidewalk. Suddenly, the defendant jumped off the porch, pulled out a gun and fired at the victim, who

---

[1] This appeal was taken originally to the Supreme Court. Pursuant to Practice Book § 4023 and General Statutes § 51-199 (c), the Supreme Court transferred the appeal to this court.

was standing at the gate. When the shots were fired, the victim tried to run away from the defendant. The defendant, still firing his gun, pursued the victim. When the victim stumbled and fell to the ground, the defendant approached him and fired the gun at him two or three more times at close range. In total, the defendant fired approximately nine to twelve shots at the victim. The victim later died, and an autopsy revealed that he was hit by eight bullets, one of which pierced his heart. Both Heron and McKoy witnessed the killing. Additional facts will be discussed throughout this opinion where relevant.

I

During voir dire, both the state and the defendant posed questions to the venirepersons regarding their objectivity in assessing the credibility of prosecution witnesses who were testifying in exchange for the state's agreement to nolle certain drug charges against them. The defendant first claims that the trial court improperly failed to prohibit, on its own motion, the parties from asking those questions during voir dire. Specifically, the defendant claims that the trial court had a duty to prohibit both parties from posing those allegedly improper "hypothetical" questions during voir dire. We disagree.

The defendant failed to raise this claim at trial and now seeks review under the doctrine of *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), and *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973).[2] We agree

[2] "Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free,

with the defendant that the record is adequate for review, and that the allegedly improper voir dire questions implicate the constitutional right to an impartial jury and to a fair trial, thereby satisfying the first two prongs of *State* v. *Golding*, supra, 239. Therefore, we will examine the defendant's claim to determine whether the alleged violation clearly exists and clearly deprived him of a fair trial in violation of the third *Golding* prong.

We start with the principle that the right to question prospective jurors in a criminal proceeding is a fundamental right that contributes to a fair trial. "The right to question each juror individually by counsel shall be inviolate." Conn. Const., art. I, § 19, as amended by art. IV of the amendments. The legislature has also recognized the importance of questioning jurors by enacting General Statutes § 54-82f, which provides in relevant part: "In any criminal action tried before a jury, either party shall have the right to examine, personally or by his counsel, each juror outside the presence of other prospective jurors as to his qualifications to sit as a juror in the action, or to his interest, if any, in the subject matter of the action, or as to his relations with the parties thereto. . . ." See also Practice Book § 848.

We also recognize that the trial court has been granted broad discretion to ensure the fairness of the voir dire process. " 'The extent to which parties should be allowed to go in examining jurors as to their qualifications is a matter largely resting in the sound discretion of the trial court, the exercise of which will not constitute reversible error unless clearly abused, and where harmful prejudice appears to have been caused thereby.' " *State* v. *Sheets*, 40 Conn. App. 328, 331, 671

therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Internal quotation marks omitted.) *State* v. *Lasky*, 43 Conn. App. 619, 631–32 n.5, 685 A.2d 336 (1996), cert. denied, 239 Conn. 959, 688 A.2d 328 (1997).

A.2d 366, cert. denied, 237 Conn. 903, 674 A.2d 1334 (1996). In the exercise of this discretion, "the court should grant such latitude as is reasonably necessary to accomplish the two-fold purpose of voir dire: to permit the trial court to determine whether a prospective juror is qualified to serve, and to aid the parties in exercising their right to peremptory challenges." *State* v. *Scuilla*, 26 Conn. App. 165, 173, 599 A.2d 741 (1991), cert. denied, 221 Conn. 908, 600 A.2d 1362 (1992).

Whenever there is a likelihood that prejudice may exist in a prospective juror that will affect the outcome of the case, the party affected thereby should be afforded sufficient latitude to uncover such prejudice. *State* v. *Rogers*, 197 Conn. 314, 318, 497 A.2d 387 (1985). That latitude is limited by the impropriety of questioning prospective jurors regarding their predisposition to decide issues with respect to evidence that may be offered at trial or with the intent to condition them to prejudge issues that will affect the outcome of the trial. *State* v. *Clark*, 164 Conn. 224, 226, 319 A.2d 398 (1973). While certain hypothetical questions posed to prospective jurors during voir dire are improper; see *State* v. *Anthony*, 172 Conn. 172, 175–76, 374 A.2d 156 (1976) (eliciting from prospective juror in advance what decision would be under particular set of facts not permitted); hypothetical questions are proper when attempting to assess a prospective juror's capacity to judge credibility. *State* v. *Pollitt*, 205 Conn. 61, 75, 530 A.2d 155 (1987) (questions regarding witness credibility proper to determine whether prejudice existed in prospective jurors).

In this case, the hypothetical questions posed to prospective jurors related solely to their ability to judge the credibility of witnesses. Both the state and the defendant questioned prospective jurors regarding their ability to judge objectively the credibility of a witness' testimony when that witness was testifying pursuant

to a cooperation agreement with the state.[3] These questions were designed to uncover prospective jurors' potential prejudice with respect to the veracity of a witness who was testifying in exchange for the state's promise not to prosecute that witness for certain drug charges. Indeed, several venirepersons who were questioned on this point stated that they generally disfavor such arrangements with prosecutors. As a result of this questioning, specific venirepersons testified that they might be less inclined to assess objectively the particular witness' testimony given that witness' motivation to testify.[4]

---

[3] A representative sample of some of the questions posed is as follows:

"Q. Now, I'm going to be calling witnesses during the course of this case who are going to tell you what they saw. . . . Two of them . . . have drug cases pending for selling drugs themselves. . . . Now, do you think that simply because a person is a drug dealer and they take the stand and they tell you what it is that [he or she] saw, because they're a drug dealer they must not be telling the truth just for that reason by itself?

"A. I would prefer to evaluate the testimony on its own merits.

"Q. Okay, now as I indicated, they have their own case pending unrelated. . . . And they have entered into what we call [a] cooperation agreement with the state of Connecticut, which basically says that in return for them testifying in this case truthfully, that they're—they're going to get benefits on their own case. I'm going to drop the charges against them for testifying in this particular case. Do you think, right, that simply because they have entered into that agreement, that when they talk to you and tell you what it is they saw, that they—that they must be lying and that you don't even need to hear them out?

"A. No I don't think that."

An example of the defendant's use of such questioning is as follows:

"Q. [The assistant state's attorney] may tell you now or he may not, that a couple of his witnesses have made deals that they are people who have pending cases, drug dealers, a drug dealer in particular who is going to testify. And you'll hear that this person came forward long after this alleged case, long after the incident and said I saw it. He's the guy who did it but what's in this for me? I'm use—I'm paraphrasing this obviously. And that's going to be one of his witnesses. How do you feel about that?

"A. I think I would like to hear how this presentation is going to be made. I think it's up to me to in fact detect the degree of credibility where this person, when he's cross-examined, he's provided info[rmation] back and forth. . . ."

[4] For example, the following exchange between the state and a venireperson occurred during voir dire:

The questions at issue in this case went directly to the prospective jurors' ability to assess the credibility of witnesses who would be called at trial. The questions were not attempts to elicit opinions from prospective jurors regarding how they would rule on a certain stated set of facts, or to condition them to prejudge pivotal issues that would affect the outcome of the trial. Because these questions were proper, and the trial court was justified in allowing counsel to probe prospective jurors on their ability to assess witness credibility through the use of hypothetical questions, the defendant's claim fails the third prong of *Golding*. See *State v. Pollitt*, supra, 205 Conn. 75 (questions permitted by court regarding witness credibility adequate alternative for uncovering prejudice in prospective jurors); *State v. Fritz*, 204 Conn. 156, 165–66, 527 A.2d 1157 (1987) (improper for court to exclude questions regarding prospective jurors' predisposition to lend greater credibility to police officer serving as witness); *State v. Dolphin*, 203 Conn. 506, 516, 525 A.2d 509 (1987) (same); *State v. Scuilla*, supra, 26 Conn. App. 173–74 (court allowed counsel sufficient latitude to uncover possible prejudice regarding ability to assess witness credibility).[5]

---

"Q. But the issue is not whether or not I should have entered into the agreement. The issue is despite the agreement or maybe on account of the agreement, are they telling you the truth about what it is that they know? . . . Do you think you can stick to that issue? Like you wouldn't say something like, hey, you know my common sense is telling me that those two people that are testifying with—with the agreements with the prosecutor, I think they're telling the truth. But I hate these agreements so much, I don't care if they're telling the truth. I'm going to disregard it because I don't care what they say. I shouldn't—I don't want to be a part of a case where the prosecutor entered into such an agreement. You understand what I mean?

"A. I understand what you're saying. . . . I still feel that their testimony could be tainted though."

[5] Since we have determined that the trial court was justified in allowing such questions, we do not reach the defendant's claim that the trial court had an independent duty to disallow such questions on its own motion. In addition, the issue of whether defense counsel may waive objection to the use of such hypothetical questions through his participation in this practice

The defendant also urges us to review his claim under the plain error doctrine. Plain error review is utilized only in extraordinary circumstances and situations in which "the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Day*, 233 Conn. 813, 849, 661 A.2d 539 (1995). Since we have concluded that the hypothetical questions during voir dire were proper under the circumstances, plain error review is not warranted.

## II

The defendant next claims that there was insufficient evidence to support his murder conviction. To support his claim, the defendant points to inconsistencies in the testimony of certain witnesses regarding the height of the gunman. He also cites the inability of one witness to provide the gunman's name to the police immediately after the incident, and another witness' failure to come forward offering to testify until over one year later.

"When we are called on to review a sufficiency of the evidence claim, we impose a two part analysis. We first construe the evidence in the light most favorable to sustaining the verdict. *State* v. *Salz*, 226 Conn. 20, 31, 627 A.2d 862 (1993); *State* v. *Rivera*, 32 Conn. App. 193, 200–201, 628 A.2d 996, cert. denied, 227 Conn. 920, 632 A.2d 698 (1993); *State* v. *Hooks*, 30 Conn. App. 232, 238, 619 A.2d 1151, cert. denied, 225 Conn. 915, 623 A.2d 1025 (1993). We next determine whether, from that evidence and all the reasonable inferences that flow from the evidence, a trier of fact could reasonably find that the defendant was guilty beyond a reasonable doubt. *State* v. *Salz*, supra [31]; *State* v. *Rivera*, supra [200–201]." *State* v. *Reddick*, 33 Conn. App. 311, 332, 635 A.2d 848 (1993), cert. denied, 228 Conn. 924, 638 A.2d 38 (1994).

need not be decided. See *State* v. *Patterson*, 230 Conn. 385, 393, 645 A.2d 535 (1994), on appeal after remand, 236 Conn. 561, 674 A.2d 416 (1996).

"It is the sole right of the jury as the trier of the facts to draw all reasonable and logical inferences from the facts as it finds them to exist. . . . It is also the absolute right and responsibility of the jury to weigh conflicting evidence and to determine the credibility of the witnesses. . . . Thus, the issue of the identification of the defendant as the perpetrator of the crime is peculiarly an issue of fact to be resolved by the jury. . . .

"The test for determining whether the evidence is sufficient to sustain a verdict is thus whether the [trier of fact] could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt." (Citations omitted; internal quotation marks omitted.) Id., 332–33; *State* v. *Ketchum,* 45 Conn. App. 270, 280–81, 696 A.2d 987 (1997).

In this case, it was reasonable for the jury to conclude that the defendant was the gunman. Two witnesses at the scene of the murder testified at trial that they knew the defendant prior to the murder and positively identified him as the gunman. One of these witnesses, McKoy, testified that she saw the defendant shoot the victim. She also testified that she went to the police station the day after the murder and picked out the defendant's photograph from police photographs. The other witness, Heron, was present on the porch during the shooting and testified that he witnessed the entire shooting incident and that the defendant was the gunman.

Inconsistencies in testimony and witness credibility are matters that are within the exclusive purview of the jury to resolve at trial. *State* v. *Ketchum,* supra, 45 Conn. App. 280–81; *State* v. *Reddick,* supra, 33 Conn. App. 332. Therefore, we find no merit to the defendant's claim that the evidence was insufficient to support a guilty verdict.

## III

Finally, the defendant claims that the trial court improperly allowed evidence with respect to his prior misconduct, which prejudiced the jury. Heron was allowed to testify that he believed that a third party was instructed by the defendant to stab him because he had witnessed the shooting. The defendant raised an objection, which was treated as a motion in limine, to the hearsay aspect of Heron's proffered testimony— that he had heard rumors that the defendant was responsible for the attempted stabbing. The trial court granted, in part, the motion in limine precluding the witness from introducing the hearsay testimony. Defense counsel did not object to the introduction of testimony as to Heron's belief as to the source of the attempted stabbing, but objected only to the hearsay component. The defendant now claims that it was improper for the trial court to allow such testimony with respect to the defendant's prior misconduct, despite his failure to raise this specific objection at trial.

This is an evidentiary claim that was not preserved at trial. "We have consistently refused to consider evidentiary rulings not properly preserved. Where the issue raised for the first time on appeal is a matter of state evidentiary law, rather than of constitutional significance, this court will deny the defendant appellate review. *State* v. *Forrest*, 216 Conn. 139, 146, 578 A.2d 1066 (1990)." *State* v. *Baldwin*, 224 Conn. 347, 362, 618 A.2d 513 (1993). Therefore, we decline to review the defendant's claim.

The judgment is affirmed.

In this opinion the other judges concurred.